(90 Misc. Rep. 142)

DEMPSEY v. NORTHEASTERN CONST. CO. et al.

(Supreme Court, Special Term, New York County.   April, 1915.)

1. CONTRACTS ⬥322—CLAIM FOR EXTRA WORK—RIGHT TO AWARD—EVIDENCE.
    Where, in a subcontractor's action to foreclose a mechanic's lien, the testimony for and against plaintiff's claim for extra work is so evenly balanced that an award based thereon would rest on mere conjecture, no award will be made for such extra work.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465, 1492, 1534–1542, 1754, 1768, 1772, 1801, 1802, 1804–1808, 1815, 1816; Dec. Dig. ⬥322.]

2. CONTRACTS ⬥322—COUNTERCLAIM FOR EXTRA WORK—SUFFICIENCY OF EVIDENCE.
    Evidence in support of a contractor's counterclaim for extra work *held* insufficient to entitle him to an award therefor, in an action to foreclose a mechanic's lien.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465, 1492, 1534–1542, 1754, 1768, 1772, 1801, 1802, 1804–1808, 1815, 1816; Dec. Dig. ⬥322.]

3. CONTRACTS ⬥277—SUBCONTRACTOR—NOTICE TO QUIT—PROOF OF SERVICE.
    Where a subcontractor is entitled by his contract to a three-day notice to comply with the contractor's demands before being forced to stop work strict proof of service of such notice is required.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1217–1232; Dec. Dig. ⬥277.]

4. CONTRACTS ⬥277—SUBCONTRACTOR—NOTICE TO QUIT—PERSONAL SERVICE.
    Where a subcontractor's contract entitles him to a three-day notice before being forced to stop work, personal notice must be given, in the absence of a showing that other notice was intended.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1217–1232; Dec. Dig. ⬥277.]

Action by William J. Dempsey against the Northeastern Construction Company and others to foreclose a mechanic's lien. Judgment according to opinion.

J. Power Donellan, of New York City, for plaintiff.
Chase Mellen, of New York City, for defendants.

FORD, J. [1] In this action to foreclose a mechanic's lien, a large claim is made for extra work, consisting of excavation, rehandling material, and other items. The testimony for and against the claim is so evenly balanced that an award based upon it would rest on conjecture merely. In other words, the plaintiff has failed to prove his claim by a fair preponderance of the credible testimony. It is, of course, possible that he is entitled to the allowance of his claim in whole or in part; but when a contractor goes ahead and does many thousands of dollars worth of work, as this plaintiff claims to have done, with nothing but oral testimony, mainly his own, to prove liability on the part of the defendant to pay for it, he must suffer the penalty, when equally credible oral testimony is given in contradiction of that offered by him.

Defendant's counterclaim is exorbitant on the face of it. Plaintiff, as subcontractor for the defendant, agreed to do the excavating, filling,

regulating, grading, and sheet piling for the gross sum of $19,618. At the time plaintiff left the job the sheet piling was completed. There remained to be done, according to the estimate of the bridge department, only 10 per cent. of the excavation and a somewhat larger percentage of the filling in. The latter unfinished work should be left out of account as an item of expense, for it appears that it could be done without cost, if not at a profit, as plaintiff claims, because other excavators in the neighborhood paid for the privilege of dumping there. As a matter of fact, one of the items which defendant credits to plaintiff is $420 collected for this dumping privilege after the latter ceased work.

[2] So it appears that with only 1,920 yards of excavation to be done, the cost of which is fixed approximately in the subcontract at 50 cents a yard, the defendant makes a counterclaim for $9,505.71 for finishing the subcontract. I do not overlook the testimony offered by defendant in explanation of this astounding amount, but my common sense balks at accepting it as satisfactory nevertheless. In brief the proof adduced in support of the counterclaim is quite as unsatisfactory as that offered by the plaintiff in support of his huge claim for extra work.

[3] Nor do I think the proof is sufficient that the three-day notice was served. Plaintiff under his contract had the absolute right to that notice, and the opportunity it would have afforded him to comply with the demands of the defendant, before being forced to stop work. How seriously the notice affected the property rights of the plaintiff appears objectively in the large counterclaim now set up against him. Strict proof should be required of the service of the notice, and that requirement has not been met, even if we regard service as claimed to have been made sufficient.

[4] But I do not believe that such service would be sufficient in any event. "Where any statute or the terms of any contract require notice to be given," says the Court of Appeals, "and there is nothing in the context of the statute or the contract, or in the circumstances of the case, to show that any other notice was intended, a personal notice must always be given." Beakes v. DaCunha, 126 N. Y. 297, 27 N. E. 251. I can conceive of no circumstances in this case that would obviate the necessity of personal notice. It appears that the plaintiff had an office not far from that of the defendant, and he was frequently upon the work. Involving a forfeiture, as it did, the service of the notice should have been personally made, and reasonably certain proof of such service given. In groping through the mazes of the mass of indefinite and contradictory evidence in the case, the only reasonably sure foundation I find is the estimate of the city engineers and the amounts admitted by the defendant to have been earned by the plaintiff. On page 127 of the brief submitted by defendants' counsel it is conceded that $947.69 for extras and $420 for the dumping privilege should be credited to plaintiff, which, added to the contract price, make a total of $20,985.69. From this should be deducted $960 for finishing the 1,920 yards of excavation at 50 cents a yard, the price mentioned in the contract, $155 for the Donovan lien, paid by the defendant,

and $17,127 cash (including allowance of $162 for derrick), leaving a balance due plaintiff of $2,743.69, with interest from May 1, 1914.

Judgment will be granted accordingly, with costs. Submit proposed findings not later than May 7th.

Judgment accordingly.